UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL GUILFOIL,

               Plaintiff,

                                   MEMORANDUM & ORDER
      -against-                  14-CV-6759(JS)

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:       Michael Brangan, Esq.
                    Sullivan & Kehoe
                    44 Main Street
                    Kings Park, NY 11754

                    Christopher J. Bowes, Esq.
                    54 Cobblestone Drive
                    Shoreham, New York 11786

For Defendant:      Candace Scott Appleton, Esq.
                    Kelly T. Currie, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201

SEYBERT, District Judge:

       Plaintiff Michael P. Guilfoil ("Plaintiff") brought this action pursuant to Section 405(g) of the Social Securities Act, 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits. Pending before the Court is Plaintiff's motion for Judgment on the Pleadings (Docket Entry 13) and the Commissioner's cross-motion to remand this case for further

proceedings pursuant to 42. U.S.C. § 405(g). (Docket Entry 17.) For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

BACKGROUND[1]

I. Procedural Background

On April 12, 2012, Plaintiff filed for social security disability benefits, claiming that he has been disabled since April 7, 2010. (R. at 128, 145.) Plaintiff attributes his disability to a back injury. (R. at 65.) After Plaintiff's application for social security benefits was denied on July 16, 2013, (R. at 8), Plaintiff requested a hearing before an administrative law judge, (R. at 6). A hearing took place on June 17, 2013 before Administrative Law Judge April Wexler (the "ALJ"), and on July 16, 2013, the ALJ issued her decision finding Plaintiff not to be disabled. (R. at 11-25, 30.) Plaintiff sought review of the ALJ's decision by the Appeals Council on July 31, 2013. (R. at 52.) But on October 16, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1.)

Plaintiff subsequently commenced this action on November 18, 2014. Plaintiff filed her motion for judgment on the

---

[1] The facts of this case are taken from the administrative record filed by the Commissioner on February 17, 2015. (Docket Entry 6.) "R." denotes the administrative record.

pleadings on June 12, 2015 (Docket Entry 13) and the Commissioner filed its cross-motion to remand on July 16, 2015. (Docket Entry 17). These motions are fully briefed and are currently pending before the Court.

## II. Evidence Presented to the ALJ

### A. Testimonial Evidence

Plaintiff was born in 1970. (R. at 34.) He has an eleventh-grade education and holds a GED. (R. at 35.) Plaintiff currently resides with his girlfriend, father, and brother. (R. at 34.) From 1995 to 2000, Plaintiff worked for the Town of Smithtown as a laborer in a recycling facility; from 2003 to 2005, Plaintiff worked an overnight shift stocking shelves for a supermarket; and from 2006 to 2007, Plaintiff worked for Hess Express as a gas station attendant. (R. at 35-36.) However, Plaintiff quit his job as a gas station attendant after his hours were cut. (R. at 35-36.) He also briefly worked as a laborer for the Town of Babylon in April 2010. (R. at 146.)

Plaintiff is 5'11 and weighs 375 pounds. (R. at 15.) He claims that he is unable to work because of "back problems." (R. at 37.) Specifically, Plaintiff testified before the ALJ that he "shattered" his "lower disk" and had to have surgery in 2011 or 2012. (R. at 38.) Plaintiff also has cellulitis, but testified that it should clear up in a year. (R. at 45.) Plaintiff admitted that he used to drink twenty beers and smoke a pack and a half of

cigarettes every day, however, he testified that he stopped smoking and has been sober since May 12, 2013. (R. at 39.) Plaintiff stopped drinking and smoking because his doctors told him that, if he continued, he would lose his legs from the knees down. (R. at 39.) Plaintiff also testified that he lost weight because he started eating better. He had lost twenty-five pounds as of the date of his hearing. (R. at 40.)

Plaintiff described living a sedentary life. He explained that he watched a lot of television, napped, and alternated between sitting and standing to avoid back pain. Plaintiff's girlfriend prepared his meals, did the shopping and laundry, and helped Plaintiff shower. (R. at 41.) Plaintiff rarely left his home, except to go to doctors' appointments--visiting Dr. Dowling every six weeks for his back pain. (R. at 38.)

For exercise, Plaintiff walked up and down his driveway twice a day. (R. at 43.) He typically walked "for about 10 minutes" then would "sit down for 15 minutes" and then "walk a little bit more." (R. at 43.) However, Plaintiff testified that he "can't walk a far distance" and if he walked more than thirty-five feet, he got a sharp pain in his back. (R. at 43.) In addition, Plaintiff testified that he could only "sit comfortably" for fifteen to twenty minutes and stand comfortably for five to ten minutes. (R. at 44.) Plaintiff brought a cane to the hearing

4

before the ALJ and explained that he used it for "balance" and to avoid falling. (R. at 44.)

Rocco J. Meola ("Meola") testified as a vocational expert before the ALJ. (R. at 46.) He classified Plaintiff's past job working as a laborer as "medium" work, and his job at the supermarket as "heavy" work. (R. at 47.) Meola was asked whether a hypothetical individual of Plaintiff's age and with his education level could perform his past jobs, assuming he was limited to performing sedentary work and could stand for six hours. (R. at 47-48.) Meola testified that such a hypothetical person would not be able to perform Plaintiff's past jobs, but listed several sedentary jobs that the hypothetical person could perform in the national economy. (R. at 48.)

B. Medical Evidence

Medical records confirm that Plaintiff injured his back on April 7, 2010 while moving a picnic table at work. (R. at 219, 331.)

1. Thomas Dowling, M.D.

On April 30, 2010, Plaintiff sought medical treatment for his back from Dr. Thomas Dowling at Long Island Spine Specialists. (R. at 219-21.) An MRI performed on April 17, 2010 by Dr. Dowling showed a small central herniated disc. (R. at 220-21.) After an examination, Dr. Dowling diagnosed Plaintiff with disc displacement without myelopathy and discogenic syndrome. (R.

5

at 220.) Dr. Dowling opined that Plaintiff could not return to work, recommended physical therapy, prescribed medication, and requested authorization to administer lumbar epidural steroid injections. (R. at 221.)

On September 2, 2010, Plaintiff reported to Dr. Dowling that the injections and physical therapy he proscribed had not improved his condition. (R. at 309-310.) Dr. Dowling therefore contemplated performing a discogram test to determine if Plaintiff was a candidate for surgery. (R. at 310.) Following a discogram performed on February 7, 2011, Dr. Dowling recommended Plaintiff undergo anterior lumbar interbody fusion surgery. (R. at 297, 299.)

Dr. Dowling performed the surgery on June 2, 2011. (R. at 213-14.) From mid-June 2011 to September 2011, Plaintiff continued to report back pain, and at times rated his pain level a nine out of ten. (R. at 269-87.) From June to September 2011, Dr. Dowling found that Plaintiff had a "total temporary" impairment and prescribed him Flexeril as needed and Nerontin. (R. at 269-87.) From September 2011 to November 2011, Plaintiff visited Dr. Dowling three times complaining of constant back pain. (R. at 263-68, 341-46.) During the visits Plaintiff did not exhibit muscle spasms, weakness, or sensory deficits. (R. at 264, 342, 345.) Dr. Dowling recommended Plaintiff continue with physical therapy. (R. at 265, 343.)

In January 2012, Plaintiff reported to Dr. Dowling that he had constant lower back pain. (R. at 260-62.) X-rays taken in January 2012 showed a maturing fusion with intact hardware and no evidence of loosening. (R. at 261.) Plaintiff's Motor strength, sensations, and reflexes were all within normal ranges. (R. at 261.) Plaintiff admitted that physical therapy had improved his strength and relieved some of his pain. (R. at 260.) Dr. Dowling diagnosed Plaintiff with myofascial-lumbar, discogenic syndrome L5-S1, and lumbar disc displacement without myelopathy. (R. at 262.) Dr. Dowling stated that Plaintiff's condition was "total temporary," and reported that Plaintiff was unable to return to work. (R. at 262.)

Plaintiff continued physical therapy from January 6, 2012 to May 29, 2012. (See R. at 253, 256, 259, 262.) By May 2012, Dr. Dowling reported that Plaintiff was continuing to demonstrate objective improvement from physical therapy, and that Plaintiff was "reasonably expected to improve with additional physical therapy treatment." (R. at 251.)

Dr. Dowling's lumbar spine examination findings from November 2, 2012 through May 6, 2013 were similar to those in July, August and September 2012. (Compare R. at 538, 541, 544, 547, 550 with R. at 553, 556, 559.) Dr. Dowling recommended "conservative" and/or "symptomatic" care using analgesics and narcotics as needed. (R. at 395, 539, 545, 548.) Dr. Dowling consistently

7

diagnosed Plaintiff with lumbar disc displacement without myelopathy, discogenic syndrome L5-S1, and myofascial-lumbar. (R. at 395, 539, 542, 545, 548.) In February of 2013, Dr. Dowling reported that Plaintiff could not return to work for an unknown period of time. (R. at 545.)

On April 8 to 13, 2013, Plaintiff was hospitalized at St. Catherine of Siena Medical Center ("St. Catherine's") for cellulitis and abscesses on his bilateral and lower extremities. (R. at 396-423.) At that time, Plaintiff reported drinking twenty beers per day and smoking one and one-half packs of cigarettes every days for twenty-five years. (R. at 410.) Plaintiff was hospitalized again at St. Catherine's several days in May 2013 for recurrent cellulitis of the lower leg. (R. at 424-46.)

On June 19, 2013, Dr. Dowling completed a medical source statement about Plaintiff. (R. at 573-74.) He opined that Plaintiff could only sit for a total of three hours in an eight-hour workday, and that he could stand or walk for a total of three hours. (R. at 573-74.) In addition, he opined that Plaintiff could sit for a maximum of thirty minutes at a time before needing to walk or stand. (R. at 573.) Further, according to Dr. Dowling, Plaintiff needed to lie down or recline for one hour in an eight-hour work day to relieve back pain. (R. at 573-74.) Dr. Dowling also opined that Plaintiff could lift up to fifty pounds occasionally. (R. at 574.)

2. <u>Chaim Shtock, D.O.</u>

Dr. Chaim Shtock examined Plaintiff on June 14, 2012. (R. at 331-34.) Plaintiff reported experiencing sharp, constant, pain, aggravated by prolonged sitting, standing, and walking. (R. at 331.) Plaintiff rated the pain a seven out of ten. (R. at 331.) Dr. Shtock diagnosed Plaintiff with lower back pain and opined that Plaintiff had severe limitations lifting, squatting, and crouching; marked limitations in stair climbing; moderate to marked limitations in long distance walking; moderate limitations in standing and sitting for long periods; and no limitations in performing overhead activities using both arms, or in using his hands for fine and gross motor activities. (R. at 333-34.)

3. <u>Jay Nathan, M.D.</u>

On January 14, 2013, Jay Nathan, M.D., an orthopedic speciality, examined Plaintiff in connection with his claim for Workers Compensation benefits. (R. at 528-30.) Dr. Nathan reported that Plaintiff had bilateral leg cellulitis, a mild limp, and noted that Plaintiff asked for assistance getting on and off the examination table. (R. at 529.) Dr. Nathan opined that Plaintiff had only a moderate disability and that he could work in

a sedentary capacity, lifting no more than ten pounds. (R. at 530.)

III. The ALJ's Decision

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not, the Commissioner considers whether the claimant suffers from a "severe impairment that significantly limits his or her mental or physical ability to do basic work activities." 20

C.F.R. § 404.1520(a)(4)(ii). <u>Third</u>, if the impairment is "severe," the Commissioner must consider whether the impairment meets or equals any of the impairments listed in Appendix 1 of the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). "These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1022 (2d Cir. 1995) (citation omitted). <u>Fourth</u>, if the impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity ("RFC") to perform tasks required in his previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). <u>Fifth</u>, if the claimant does not have the RFC to perform tasks in his or her previous employment, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled and entitled to benefits.

The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. <u>See</u> <u>Shaw</u>, 221 F.3d at 132; <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009). "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or

treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Boryk ex rel. Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

Here, the ALJ applied the five-step analysis described above and determined that Plaintiff was not disabled. (R. at 11-25.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 12, 2012. (R. at 13.) At step two, the ALJ found Plaintiff's impairments included a back disorder, cellulitis, and obesity. (R. at 13.) At step three, the ALJ found that Plaintiff's impairments did not meet or equal the criteria of an impairment listed in Appendix 1 of the Social Security regulations, and that Plaintiff retained the residual function capacity ("RFC") to perform sedentary work as defined in 20 C.F.R § 404.1567(a). (R. at 13-14.) Specifically, the ALJ found that in an eight-hour workday with normal breaks, Plaintiff could sit for approximately six hours, stand or walk for approximately two hours, and occasionally lift 10 pounds. (R. at 13-14.) At step four, the ALJ found that Plaintiff's RFC precluded Plaintiff from performing his past jobs. (R. at 23.) At step five, the ALJ considered Plaintiff's RFC, the vocational factors

of age, education, and work experience, and found that Plaintiff could perform sedentary work existing in significant numbers in the national economy. (R. at 23-24.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. at 24.)

DISCUSSION

I. Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether Plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (internal quotations marks and citation omitted), superseded by statute on other grounds, 20 C.F.R. § 404.1560. If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

"Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971)). The substantial evidence test

applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id.

To determine if substantial evidence exists to support the ALJ's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

## IV. Analysis of the ALJ's Decision

The ALJ has the responsibility to determine a claimant's RFC based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a), 404.1546(c). The RFC is a determination as to how a claimant's impairments and related symptoms affect what he can do in a work setting. See 20 C.F.R. §§ 404.1545(a)(1), 404.1569a. In determining a claimant's RFC, the ALJ must weigh the record evidence and resolve any conflicts that exist. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013); Veino v. Barnhart, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

In this case, the ALJ concluded that Plaintiff had the residual function capacity to perform sedentary work. (R. at 14.)

Specifically, The ALJ concluded that Plaintiff could sit for six hours in an eight-hour workday and occasionally lift 10 pounds. (R. at 14.)  However, the ALJ's decision does not reconcile the conflicting evidence in the record concerning Plaintiff's physical limitations. (R. at 14-23.)

The three doctors who examined Plaintiff did not agree about his physical limitations. In particular, they disagreed about Plaintiff's ability to sit for long periods of time--a prerequisite for performing sedentary work. Dr. Dowling, Plaintiff's treating physician, opined that Plaintiff could sit for only three hours in an eight hour workday and that he needed to get up every thirty minutes. (R. at 573-74.) Conversely, Dr. Shtock opined that Plaintiff was only moderately limited in his ability to sit for long periods of time. (R. at 333.) And, Dr. Nathan concluded that Plaintiff could work in a "mostly sedentary" capacity and was able to lift ten pounds or less. (R. at 530.) Plaintiff's statements concerning his ability to sit for long periods are conflicting as well. (See R. at 41, 45, 254, 331, 546.)  Although the ALJ acknowledged Dr. Dowling's April 2013 opinion regarding Plaintiff's limited ability to sit for long periods, the ALJ chose to impose her own assessment of Plaintiff's limitations, reasoning that Dr. Dowling's notes only revealed "mild back issues." (R. at 22-23.)  This was improper. Burgess v. Astrue, 537 F.3d 117, 131 (2d Cir. 2008) ("Neither a reviewing

15

judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion" (internal quotation marks and citations omitted)). The ALJ also stated in conclusory fashion that Dr. Shtock's "opinion [was] poorly reasoned and entitled to limited weight" because it was more restrictive than Dr. Dowling's opinion. (R. at 22.) However, the ALJ failed to provide a cogent reason to disregard Dr. Shtock's findings. (R. at 22-24.) And critically, the ALJ failed to explain how he resolved the three conflicting medical opinions addressing Plaintiff's ability to sit and undertake sedentary work.[2]

Though both parties agree that the ALJ's analysis was flawed, the Commissioner and Plaintiff disagree about what the Court should do about it. (See Comm'r.'s Br., Docket Entry 18, at 22-25; Pl.'s Br., Docket Entry 14, at 1.) The Commissioner advocates remanding the case to allow the ALJ to resolve the evidentiary conflicts in the record, while Plaintiff argues that "the medical evidence conclusively establishes that [he] is disabled" and seeks to have the case remanded "solely for [a] calculation of the disability benefits owed to him." (See Comm'r.'s Br. at 25; Pl.'s Br. at 1.)

---

[2] The ALJ also failed to consider Plaintiff's use of a cane. The record indicates that Plaintiff used a cane to maintain his balance. (See R. 44, 169, 172, 332, 541, 559.)

The Second Circuit has held that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." See Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013); Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 1999) (holding that "the district court was required to remand the case so that step five of the sequential analysis could be completed and a full record developed before any award of benefits was made"); Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S., 728 F.2d 588, 591 (2d Cir. 1984) (explaining that "genuine conflicts in the medical evidence are for the Secretary to resolve"). Although Plaintiff argues that the Court should find as a matter of law that he is disabled, he acknowledges the existence of conflicting medical evidence concerning his restrictions. (See Pl.'s Br. at 23.) This case must therefore be remanded to the ALJ so that factual inconsistencies in the record regarding Plaintiff's ability to perform sedentary work can be resolved.

## CONCLUSION

For the foregoing reasons, Defendant's cross-motion to remand for further proceedings (Docket Entry 17) is GRANTED and Plaintiff's motion for judgment on the pleadings (Docket Entry 13) is DENIED. This case is remanded to the ALJ. The ALJ is directed

to hold a new hearing and to address and remedy the issues identified in this Memorandum & Order.  The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    March 29, 2016
          Central Islip, New York